**Leslie T. ROGERS, Plaintiff,**

v.

**Edward KELLY, Superintendent Little Rock, Arkansas, School District, et al., Defendants.**

**No. LR-C-82-485.**

United States District Court,
E.D. Arkansas, W.D.

Oct. 2, 1987.

John W. Walker, Little Rock, Ark., for plaintiff.

G. Ross Smith, Little Rock, Ark., for defendants.

**1374**

## ORDER

EISELE, Chief Judge.

In an Opinion filed October 9, 1985, the Eighth Circuit Court of Appeals partially reversed this Court's Judgment in the above-styled case. Specifically, the Eighth Circuit affirmed the denial of plaintiff's claims of discrimination arising out of his discharge and reversed this Court's conclusion that plaintiff had not been denied procedural due process in being terminated. The Court of Appeals remanded the case with instructions that the Court determine damages for the denial of due process.

█ In assessing damages, the Court must determine whether plaintiff suffered any actual damages from the deprivation. As the Supreme Court clearly stated in the controlling case of *Carey v. Piphus,* 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed. 2d 252 (1978), the deprivation of a right to procedural due process without proof of actual damages warrants only an award of nominal damages:

> By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.
>
> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

(Citations omitted; footnote omitted.) *See also Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545 (8th Cir.1983) (awarding nominal damages for discharge of employee in violation of procedural due process, where employee conceded that allegations of impropriety were true).

Since its pronouncements in *Carey,* the Supreme Court has found occasion to amplify its remarks concerning the appropriate assessment of damages. In *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2544, 91 L.Ed. 2d 249 (1986), an action arising from the unwarranted discharge of a teacher, the Court cited *Carey* in support of its holding that the abstract value of a constitutional right could not serve as a basis for an award of compensatory damages in an action arising under 42 U.S.C. § 1983. In accordance with its conclusion that damages in a § 1983 action are ordinarily determined by common-law tort principles, the Court further reaffirmed that compensatory damages might include not only verified pecuniary losses, but also payment for such subjective consequences as impairment of reputation, personal humiliation, and mental anguish and suffering. *Id.* 106 S.Ct. at 2542–43. Finally, the Court observed that punitive damages in an action of this sort would be appropriate only to punish willful or malicious conduct on the part of the defendant or to deter others from similar conduct in the future. *Id.* at 2543.

█ It follows from the principles set forth above that plaintiff must be limited to nominal damages unless the constitutional breach either caused him actual loss or was sufficiently egregious to warrant an assessment of punitive damages. With respect to the issue of actual loss, in terms of tort principles the threshold question is whether defendants' failure to afford plaintiff procedural due process prior to his termination proximately caused his subsequent financial and professional reversals. The Court is persuaded that no such actual damage occurred, since it is both apparent from the factual record and implicit in Judge Overton's unassailed conclusions that plaintiff would have been fired even if he had been accorded procedural due process.

Even if it were not independently convinced from the record that the Board of Education would never have voted to con-

tinue Dr. Rogers' employment, this Court would be obliged to defer to Judge Overton's clear statements in support of that conclusion in his Memorandum and Order of October 4, 1984. Judge Overton expressly concluded "that the plaintiff was not equipped by temperament or attitude for the job of assistant principal." ("Memorandum and Order," p. 10.) He further remarked that Dr. Rogers "was at fault in each incident" giving rise to the termination, "was unable to resolve his differences of opinion with Mrs. Hubbard [the principal] and others without an unpleasant encounter," and displayed a "self-righteousness" regarding matters of poverty and race that in no way served to excuse his "abusive behavior and disruptive attitude ... on many occasions." *Id.* at 3.

Judge Overton's conclusions, based on the testimony at trial, echo the list of causes set forth in Superintendent Kelly's letter of intent to terminate Dr. Rogers:

(1) Your refusal to comply with and carry out certain tasks and duties assigned to you by your supervisor.

(2) Specific acts of insubordination, including telling youngsters not to do certain things they were told to do by Mrs. Hubbard.

(3) Your refusal to support certain policies and procedures of the school district.

(4) Your harrassment and intimidation of fellow employees through threats of legal action and threats to use a tape recorder in the performance of your duties.

Plaintiff's Exhibit # 7 contains an elaborate record of reports and memoranda documenting the incidents prompting Dr. Kelly's decision to terminate plaintiff. That Exhibit concludes with a 7-page memorandum itemizing the episodes underlying Dr. Kelly's conclusions. It is noteworthy that the Board, when confronted with the material contained in Exhibit # 7, voted unanimously to terminate Dr. Rogers' employment, and that a motion to reconsider that decision after the post-termination hearing failed for lack of a second. Under the peculiar facts and circumstances of this case the Court finds no basis for the belief that Dr. Rogers would have been any more successful in justifying his record before the termination than he was immediately thereafter.

The question arises, however, whether Dr. Rogers was entitled to a variety of procedural due process that might, under the facts of this case, realistically have resulted in his remedying the inadequacies in his performance in time to avoid the termination altogether. If such were the case, Dr. Rogers might be deemed to have suffered actual damages and be entitled to more than nominal compensation. Thus far, the Court has concluded only that Dr. Rogers was not actually damaged by defendants' violation of the procedural provisions of the Teacher Fair Dismissal Act of 1979, Ark.Stat.Ann. §§ 80–1264 through 1264.10 (1980) (repealed). Neither Judge Overton nor the Eighth Circuit Court of Appeals in its remand Opinion determined fully and finally whether Dr. Rogers was further protected under the Principals' Roundtable Agreement and/or the Classroom Teachers' Association Agreement ("CTAA") and, if so, whether any violation of the procedural protections set forth therein can be deemed to have resulted in actual damages.

The issue of the applicability of these Agreements was, however, before the Court in the underlying action, and this Court must, and does, assume that both parties tendered all pertinent information during the trial of this action. On the basis of that record, Judge Overton expressed "doubts that the Principals Roundtable Agreement was intended for assistant principals" and concluded that the CTAA, if applicable, was substantially, if not actually, complied with by defendants. ("Memorandum and Order," p. 12.) The Eighth Circuit Court noted in passing its "serious doubts" whether the procedures of either Agreement were complied with, but obviously did not feel compelled formally to reach the issue of the applicability of, or compliance with, the terms of these documents. (Slip Opinion, p. 12.)

Before considering whether actual damages might have resulted from the violation of either Agreement, this Court will

consider their applicability to assistant principals. Based on its review of the Principals Roundtable Agreement itself and of Judge Overton's findings of fact as set forth in his Memorandum and Order, this Court is persuaded that the Roundtable Agreement cannot be deemed to apply to assistant principals. With respect to the document itself, the Court notes that the draftsmanship is less than rigorous, leaving it unclear precisely what sections apply to what personnel. In certain Articles, such as those entitled "Working Conditions" (Article VIII) and "Building Responsibility" (Article XI), references to "principal" appear unambiguously limited to principals. In certain others (e.g. Article XII, entitled "Promotional Practices for Positions other than Principal"), it is expressly stated that both principals and assistant principals are covered. Article XIV, entitled "Sabbatical Leave Policy for All Principals, Assistant Principals," specifies a dual coverage, but the text makes references only to "principals." The applicable section on "Fair Dismissal" is unaccountably located under Article XIII, entitled "Voluntary and Administrative Transfers." Sections A and B of this Article, entitled "Voluntary Transfers" and "Administrative Transfers," respectively, refers only to "principals." Section C, entitled "Reduction–In–Force," refers to "principals/assistant principals." Section D, which deals with "Fair Dismissal" and is thus the pertinent passage in this case, again mentions only principals.

The Court has difficulty drawing any firm conclusions from this review, other than that the draftsmanship of the document is woefully inadequate. On balance, however, the Court finds it most reasonable to conclude and more probably true that the express designation of "principals" in some sections of Article XIII and of "principals/assistant principals" in others invites a restrictive reading of these terms. The Court recognizes that the term "principals" was apparently used as a shorthand for both principals and assistant principals in Article XIV, which refers in its title to both categories of official. Article XIII, however, designates one variety of official in certain sections and both varieties in others—a practice that clearly suggests an intention to distinguish between them. The extensive procedural protections set forth in the "Fair Dismissal" section consequently cannot be considered applicable to assistant principals.

■ The Court is strongly reinforced in this conclusion by Judge Overton's persuasive factual analysis in his Memorandum and Order which this Court is required to, and does, accept. The plaintiff at the trial offered testimony intended to help resolve any possible ambiguity in Section D. Having had repeated occasions to hear the testimony of former superintendent Dr. Paul Masem, who had been terminated by the Little Rock School Board and thus might well (as indicated by Judge Overton) have been motivated in his testimony by animus against the Board, the Court chose not to credit his bare assertion that the Agreement applied to assistant principals. The reasonableness of this credibility finding is supported by the fact that Dr. Masem could not point to one instance in which the Agreement had been applied to assistant principals. It is further supported by the actual administrative interpretation that had been placed on the provision over a long period of time. Note the following analysis in Judge Overton's Opinion:

> Apparently, nobody thought the Roundtable Agreement was applicable to Dr. Rogers because the grievance procedure was not invoked when Mrs. Hubbard gave him unfavorable evaluations in February and March, or when he was removed from his job and transferred to the personnel office in April. Since the assistant principals were evaluated by the principals who sent out their notices of deficiency, (and not the superintendent), it would appear that the agreement (and the practices followed in the evaluation procedure) did not contemplate that assistant principals were subject to the agreement.

The record reveals that the parties had a full opportunity to develop this issue and did so. This Court is thus persuaded that

the Principals Roundtable Agreement does not and did not apply to assistant principals and that plaintiff therefore had no entitlement to the procedural requirements set forth therein.

Assuming, *arguendo,* that the Roundtable Agreement did apply, the Court is of the opinion that the Board complied with those provisions thereof which are applicable here. Admittedly, the Superintendent did not observe the formula set forth of notifying the plaintiff of deficiencies; allowing 60 days for improvement; renotifying plaintiff; and arranging for a hearing after the grievance procedure had been exhausted. The Agreement contains a provision, however, that, notwithstanding the procedure just recited, "the contract of any principal who engages in conduct seriously prejudicial to the best interests of the school system may be terminated at any time." Dr. Rogers' conduct during his employment might well be characterized as "seriously prejudicial to the best interests of the school system" and, as such, may have triggered application of this section. The record reveals that Dr. Rogers engaged in a protracted pattern of unprofessional conduct, *including open insubordination,* heated unjustified confrontations with colleagues, chronic threats of legal action, a near paranoid insistence on taping exchanges and thus "making a record," and—perhaps worst of all—outright encouragement of students to flout the authority of their teachers and principals. This record thus suggests that, fairly and reasonably construed, the "strongly prejudicial" threshold set forth in the Roundtable Agreement was crossed in this case, and that no procedural violation can be held to have occurred.

The record further suggests that if a procedural violation were deemed to have occurred, no actual damages should be assessed, since Dr. Rogers, in light of his antagonism and temperamental unsuitability for his position, would almost certainly not have profitted from the 60-day opportunity to remedy his failings and thereby avoid termination. Exhibit #7 indicates that plaintiff's predictable response to any criticism was to become hostile. Had he

been granted access to an arguably available avenue for rehabilitation, there is nothing in the record to suggest that he would have done anything other than to continue on his well established path of confrontational resistance, leading inevitably to his termination prior to the time when he would attain tenure (which is to say, at approximately the same time he was actually terminated).

■ The Court likewise shares Judge Overton's conclusion that defendants substantially complied with the CTAA. Having reviewed the applicable portions of that Agreement as set forth in Plaintiff's Exhibit 6A, the Court sees no basis for even concluding that the Agreement applies to assistant principals. The document by its title refers only to teachers, and no other officials are mentioned in the text itself. There is nothing to indicate any intention that the document cover unspecified officials, including assistant principals. In fact the whole thrust of the agreement is to the contrary.

Even if the Agreement were held to apply, however, the Court shares Judge Overton's opinion that defendants substantially complied with its terms. The Agreement essentially provides that a probationary teacher be notified of problem areas and afforded assistance and an opportunity to improve any substandard performance; that the teacher be notified again if the performance remains substandard, as well as warned of possible nonrenewal; that at the end of 40 contract days, the teacher be apprised of alleged deficiencies that have and have not been remedied; and that notice of a decision not to renew the teacher's contract be mailed at least 5 days before the Board meeting to act on the Superintendent's recommendation. The record in this case reveals that Dr. Rogers was informed on numerous occasions of his deficiencies in various areas. On January 14, 1982, he was advised by Associate Superintendent Williams that his (Dr. Rogers') numerous complaints were unsubstantiated and he was warned to act more professionally "or a change will be made." On February 2, 1982, Mrs. Hubbard informed him

by memo of areas needing improvement. On March 9, 1982, he received a memo from Mrs. Hubbard calling upon him to develop performance standards to remediate specific areas of deficiency. In the following months, Dr. Rogers was counseled and warned on numerous occasions regarding specific areas of inadequacy. On June 15, 1982, he was informed by letter that Dr. Kelly would recommend termination of his employment. The Board met and acted on that recommendation on July 13, 1982. While there is no requirement of a hearing in the CTAA, Dr. Rogers was afforded a post-termination hearing before the Board. The Court finds that this chronology of events reflects at least the substantial equivalent of the procedural protections called for in the CTAA. Indeed plaintiff was actually given more procedural due process than that contemplated by the CTAA.

The Court is further of the opinion that plaintiff could not be held to have suffered any actual damages even if the CTAA did apply and were violated. As suggested above, the record contained in Exhibit # 7 reflects a pattern of defiance and increasing hostility by plaintiff to every suggestion that his performance was in need of improvement. This Court is convinced that a literal adherence to the terms of the CTAA would not have changed this pattern in the least, and that Dr. Rogers would consequently certainly have been fired just as he in fact was. It follows that under all possible versions of due process in this case, Dr. Rogers is entitled only to nominal damages. *See Dean v. Civiletti,* 670 F.2d 99 (8th Cir.1982) (per curiam).

■ It remains to be determined what fee plaintiffs' counsel should be awarded. A fee determination in a case resulting in nominal damages for a procedural due-process violation is left to the sound discretion of the trial court, subject to the following guiding principles:

[T]he fact that plaintiff failed on some of the issues, including her request for reinstatement, which was probably the one thing she wanted most out of her suit, is directly relevant on the question of the proper amount of a fee award. Obviously an award in the full amount requested would not be appropriate. The District Court should first consider what amount of plaintiff's attorneys' time is fairly attributable to the issues on which she prevailed. Ordinarily, a fee award should then be made for the number of lawyers' hours so expended at whatever hourly rate the District Court determines is appropriate.... In addition, the District Court may consider, if the evidence warrants, whether the time spent on the issues on which plaintiff prevailed was excessive.

*Fast v. School District of City of Ladue,* 728 F.2d 1030, 1035 (8th Cir.1984).

■ Three attorneys represented Dr. Rogers in proceedings below the appeals-court level—Mr. John Walker, Mr. Lazar Palnick and Mr. Richard Roachell. Mr. Roachell has submitted an affidavit and itemization of hours indicating that his representation was limited to the due-process issue on which plaintiff prevailed. The Court has reviewed Mr. Roachell's petition and finds that his requested billing rate of $85 per hour is not unreasonable, given counsel's experience and reputation and the standard for billing in this community. The Court further finds that his expenditure of 31.3 hours on this issue is not excessive. The Court will therefore award him his requested fee of $2,660.50, as well as expenses in the amount of $26.20.

■ The Court finds itself unable to deal with the fee petition submitted by Messrs. Walker and Palnick, however. Mr. Walker and Mr. Palnick have requested fees in the amount of $18,973.23 and $12,523.62, respectively, both figures including a 35% enhancement. As is clearly stated in their petition, counsel have requested these fees on the assumption that the relief accorded Dr. Rogers by the Court, on remand, would consist of reinstatement, backpay and damages. As the above analysis indicates, however, Dr. Rogers is entitled only to token relief for the due process violation. He has failed entirely in his request for substantive relief. Under the principles set forth in *Fast,* this Court must generally

base its award of fees primarily on a review of the time devoted to the issue on which plaintiff actually prevailed. Counsel are therefore directed to adjust and resubmit their fee petitions consistent with the views expressed herein. This should be done no later than the 20th day of October, 1987.

IT IS THEREFORE ORDERED that plaintiff be, and he is hereby, awarded nominal damages in the amount of $1.00 for defendants' violation of his right to procedural due process. IT IS FURTHER ORDERED that plaintiff's counsel Richard Roachell be, and he is hereby, awarded an attorney's fee and costs in the amount of $2,686.70. IT IS FINALLY ORDERED that Messrs. Walker and Palnick modify and resubmit their petitions for attorney's fees in accordance with the views set forth herein. The modified petitions should be filed on or before the 20th day of October, 1987.