**William TOLSON, Plaintiff,**

v.

**SHERIDAN SCHOOL DISTRICT, Thomas Warmack, President, Sheridan School Board, In His Official And Individual Capacities; and Donald Turney, Superintendent, Sheridan Public Schools, In His Official And Individual Capacities, Defendants.**

**No. PB-C-86-44.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

Dec. 16, 1988.

Brian Wolfman, Legal Services of Arkansas, Little Rock, Ark., for plaintiff.

W. Paul Blume, G. Ross Smith & Associates, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Trial was held before the Court and a jury from January 19th to the 21st, 1988. On January 21, 1988, the jury returned a verdict in favor of plaintiff and against the defendant school district on the breach of contract claim and awarding damages of $12,000.00. The remaining due process claims of his property and liberty interests were taken under advisement and a post-trial briefing schedule was set. Plaintiff thereafter submitted amended proposed findings of fact and conclusions of law along with supporting brief. Defendants, although given additional time, opted not to submit any further arguments in their behalf. In light of the evidence presented at trial, the findings by the jury and the applicable law, the Court now makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On July 3, 1985, plaintiff William Tolson and defendant Sheridan School District entered into a contract under which Tolson was to drive a school bus for the defendant.

2. In exchange for driving the school bus, Tolson was to be paid $2,478.00 under the contract.

3. The contract was for a definite term, September 3, 1985, through June 3, 1986. Furthermore, bus drivers were rehired each school year in the absence of a lawful termination or the driver quitting.

4. Previous to the 1985–86 school year, Tolson had driven a school bus for the defendant. He had driven a school bus as a substitute driver during the 1984–85 school year and while a student at Sheridan High School. These previous bus driving experiences were without serious incident.

5. School bus drivers in the Sheridan School District drive a morning and an afternoon route, and they did so during September, 1985.

6. On September 30, 1985, Tolson returned from his normal morning bus route and proceeded to the school bus shop. He had had some discipline problems with the students on his bus that morning.

7. He handed his "bus conduct reports", which are forms upon which drivers report unruly or improper student behavior on the buses, to Harvey Nelson, the defendants' head shop mechanic. James Zimmerman, Assistant Superintendent for Maintenance and Transportation, was also present. Among other things, Tolson said to Zimmerman that if the school district were not able to discipline the school children, they might have to find another bus driver. Neither Zimmerman nor Nelson responded to the comment.

8. Thereafter, with Zimmerman still present, Nelson instructed Tolson to take home a bus other than Tolson's regular bus since there was a mechanical problem with the tailpipe and Nelson wanted it left in the shop so that it could be fixed. Nelson told Tolson that when he came back in the afternoon, he could get his regular bus.

9. Tolson then drove the replacement bus home. It was the usual custom for school bus drivers to keep the buses at their homes overnight, and between morning and afternoon routes.

10. When Tolson arrived home with the replacement bus, he parked on the road in front of his house and left in his pick-up

truck to take care of some personal business in Pine Bluff.

11. Meanwhile at the shop, Zimmerman instructed Nelson to go to Tolson's home to pick up the bus. Nelson, acting under the authority of Zimmerman, went to Tolson's home with another one of defendant's employees, Karen Wilkerson.

12. Without giving notice of any kind, Wilkerson took the bus and drove it back to the bus shop, effectively terminating Tolson's employment. On January 21, 1988, the jury decided that Tolson had been discharged without cause by the defendant Sheridan School District at this point. This finding of fact is now the law of the case.

13. Later that day, after Tolson returned home, he called Nelson to see where his bus was. Nelson told Tolson that Zimmerman had instructed Nelson to pick up the bus.

14. Tolson asked Nelson if he was fired. Nelson told Tolson that he would not be needed any longer, and that he didn't know anything further. Nelson did not give Tolson any reasons for his dismissal.

15. Later that day, Tolson contacted the office of defendant Donald Turney, who was superintendent of the Sheridan School District at that time. Tolson wanted to know the reasons for his firing, and he wanted to get his job back. Tolson was informed by Turney's secretary that Turney was not in and that he should contact Turney the next day.

16. The next day, October 1, 1985, Tolson met with Turney at Turney's office. Turney said there had been some complaints about Tolson, but he would not tell Tolson the nature of the complaints or who made them. Tolson explicitly asked for the names of those parents who had allegedly made complaints. In addition, Turney would not go into any detail about the reasons for the dismissal.

17. Tolson asked Turney for permission to go in front of the school board. Turney told Tolson that he should write a formal letter and submit it to his office. The only other thing that Turney told Tolson was the date of the next school board meeting.

18. Neither Turney nor any other employee of the Sheridan School District gave Tolson notice of the specific charges against him. He was not given any notice in writing.

19. On approximately October 9, 1985, Turney sent Tolson a copy of the school board agenda for October 14, 1985. The agenda stated with regard to Tolson that "Mr. William Tolson requested a hearing regarding his dismissal as a district bus driver."

20. Tolson was not given any other notice of this hearing or the charges against him, nor the information and evidence which was being used against him, including the same information that the school board had concerning the matter.

21. On or about October 9, 1985, Turney sent the school board agenda to all six members of Sheridan School Board. In addition, he sent "support information", which was admitted at trial as plaintiff's Exhibit 8, to the school board members concerning Tolson. Tolson was never given access to this information, nor was he given a chance to rebut it. He never had access to this information until it was disclosed during discovery in the instant action.

22. This support information indicated, among other things:

a. that Tolson was a bus driver until September 30th when he was dismissed by Zimmerman;

b. that Turney had received complaints concerning poor discipline on the school bus;

c. that Zimmerman had told Nelson to get Tolson's bus on September 30, "in effect relieving him of his job;"

d. that in Turney's "personal opinion ... this driver cannot handle bus driving in a manner that is emotionally safe for children. His behavior borders on being a little 'strange';"

e. Turney's belief that Tolson's dismissal was abrupt when viewed in comparison to other driver offenses;

f. the reason Turney dismissed Tolson was to set an example for other drivers.

23. The support information sent to the school board by Turney indicates that the decision to dismiss Tolson was already made, was final, and could not be reversed.

24. The school board members used the support information to prepare for the meeting. They were not given reason to doubt its accuracy. Defendant Warmack admitted at trial that the other school board members present at the meeting may well have relied on the support information in forming their opinions on the Tolson situation.

25. At the school board meeting on October 14, 1985, Tolson explained to the school board the problems that he was having on his bus, detailing a few specific incidents. He explained that, although he went through the proper channels, he was not getting help from the school district in correcting discipline on the bus.

26. Tolson had specifically requested in writing that Zimmerman and Nelson be at the hearing. While Zimmerman and Nelson were present at the hearing in the back of the room, they were not up at the table where Tolson was explaining his situation. Zimmerman did not hear anything that was presented at the school board meeting. Nelson heard only some of the matters that were discussed at the portion of the meeting concerning Tolson. Tolson wanted to ask them questions, but he was explicitly denied that right. Defendant Thomas Warmack, President of the Sheridan School Board, told Tolson that it was going to be a long meeting that night and that he could not question Zimmerman.

27. Only four of the six members of the school board were present at the October 14, 1985, meeting. After the portion of the meeting concerning Tolson, which lasted twenty (20) to thirty (30) minutes, the school board members present did not confer with one another and took no action to reverse Zimmerman and Turney's decision to discharge Tolson.

28. The jury's verdict of January 21st determined that the reasons were not the kind to justify the discharge of Tolson as a driver and so the Sheridan School District did not discharge him for cause.

29. Defendants Sheridan School District and Turney took minutes on portions of the school board meeting, including the part concerning Tolson. Those minutes were published on the first page of a newspaper having general circulation in the county. The article related that Tolson had not followed all directives, the replacement driver had not had any discipline problems turned in, and that Tolson was dismissed for his inability to control students on the bus.

30. If Tolson had been apprised of the support information, he would have had the opportunity to present testimony to the effect that his discharge was wrongful. This would have included, but not have been limited to, testimony from parents indicating that children, and not Tolson, were responsible for the discipline problems on the bus, that drivers prior to and subsequent to Tolson had similar discipline problems on Tolson's bus route, that school officials did not use the proper channels in order to deal with discipline on Tolson's bus as they were required to do, and that the adverse information on the support information was false, misleading, and incomplete.

31. If Tolson had been given the opportunity to cross-examine Nelson and/or Zimmerman, he could have presented testimony to the effect that he had been a good bus driver in the past, that school officials had not given him support in dealing with the discipline problems on the bus, and that he had been willing to work with supervisors and co-workers in order to deal with any problems that may have arisen.

32. If Tolson had been given specific notice of the charges and witnesses against him, he would have been able to confront that evidence and dispel much of it. Because he was not given access to the support information sent to the school board, and because he was never given notice of the specific individuals who had allegedly complained about him and the specifics of

the alleged complaints, his presentation at the school board meeting was prejudiced.

33. The total compensation Tolson was to be paid under his contract with Sheridan School District was $2,475.00. He was paid only $265.20, representing his wages through the morning run on September 30, 1985. Therefore, the amount still unpaid under the contract is $2,209.80. The loss of these wages resulted directly from the deprivation of Tolson's due process rights by defendants. In addition, as a result of his loss of employment, Tolson and his family lost their utilities in the fall and winter of 1985–86 for a period of approximately five months. Tolson was forced to place in hock many of his personal possessions. He expended time and resources looking for further employment. He was unable to provide adequately for his pregnant wife and three children, two of whom are disabled. He eventually obtained a job in the spring of 1986 delivering daily newspapers between 1:00 a.m. and 3:00 a.m. o'clock. All of the above difficulties caused Tolson emotional and physical stress.

34. The value to Tolson of his utilities, and his physical and emotional well-being during the fall and winter of 1985–86 was lost as a reasonably foreseeable consequence of defendants' due process violations.

## CONCLUSIONS OF LAW

1. Defendants at all times pertinent to this action were acting under color of law within the meaning of 42 U.S.C. § 1983.

2. Under the due process clause of the Fourteenth Amendment to the United States Constitution, a public employee is entitled to procedural due process if he or she "had a property right in continued employment." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

3. Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...". *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

4. The parties have stipulated that Tolson had a property interest in his employment contract within the meaning of the Due Process Clause of the Fourteenth Amendment. *See* Stipulation, ¶ 2 (filed November 3, 1987). Thus, Tolson was entitled to due process.

5. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original), *quoted in Loudermill*, 105 S.Ct. at 1493.

6. In the case of a public employee such as Tolson, "something less" than a full evidentiary hearing is sufficient prior to the termination. *Loudermill*, 105 S.Ct. at 1495, *quoting Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). "[The] pretermination hearing need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions ...". *Loudermill*, 105 S.Ct. at 1495.

7. Tolson was entitled to notice and opportunity to respond prior to his termination. Specifically, he was entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Loudermill*, 105 S.Ct. at 1495.

8. Tolson was effectively discharged by Zimmerman and/or Turney when his bus was picked up at his home on the morning of September 30, 1985. He thereafter spoke to Nelson and the discharge was confirmed. He no longer had the means by which to accomplish his job. The jury has found that Tolson was, in fact, discharged without cause. Tolson had *no hearing whatsoever* prior to his dis-

charge and, therefore, his due process rights were violated.

9. In addition, Tolson's subsequent meeting with Turney, although it was after Tolson's termination, also did not meet the pre-termination requirements of *Loudermill*, because Turney did not give Tolson oral or written notice of the specific charges against him, an explanation of the employer's evidence, nor an opportunity to present his side of the story. *Loudermill*, 105 S.Ct. at 1495.

10. Moreover, the total lack of pre-termination procedure in the instant case is especially grevious because the post-termination procedures were also inadequate under the due process clause. In such a case, the pre-termination procedures must be more in-depth and meaningful than would otherwise be required. *Loudermill*, 105 S.Ct. at 1496 and n. 12.

11. Regardless of whether pre-termination proceedings are adequate, the equivalent of a full evidentiary hearing is necessary either pre or post-termination in order to meet the demands of due process. *Loudermill*, 105 S.Ct. at 1496.

12. At a minimum, to support the termination of a governmental employee who possesses a property interest, the employer must provide to the employee (a) clear and actual notice of the reasons for termination in sufficient detail to enable the employee to present evidence relating to those reasons; (b) notice of both the names of those who have made allegations and the specific nature and factual basis for the charges; (c) a reasonable time and opportunity to present testimony in his or her defense; and (d) a hearing before an impartial board of tribunal. *Agarwal v. Regents of University of Minnesota*, 788 F.2d 504, 508 (8th Cir.1986).

13. The notice and opportunity to be heard afforded Tolson does not meet these minimal standards of due process. Tolson was not given the names of parents or others whose evidence upon which Zimmerman and/or Turney allegedly relied in terminating Tolson and upon which Turney allegedly relied in drafting the support information he sent to the school board. None of this information, let alone the details of it, was given to Tolson and, thus, his rights to due process were violated.

14. Apart from the names of those individuals allegedly making charges against Tolson, Tolson was not given any detailed notice of the school board's charges against him and so was also not given a reasonable opportunity to present testimony through his own witnesses in his defense.

15. A governmental employer has the obligation to make these procedures available, including an opportunity to confront and cross-examine adverse witnesses. *Parks v. Goff*, 483 F.Supp. 502, 505–06 (E.D.Ark.1980). Because Tolson was explicitly denied the right to cross-examine witnesses which he himself requested be present, his due process rights were violated. In addition, because much of the allegedly adverse information against Tolson was not specified in any notice nor was it given to Tolson in any other way, he was unable to cross-examine and confront those anonymous witnesses. Thus, his due process rights were violated.

16. It is also a crucial element of due process that the tribunal or hearing officer acting as decisionmaker be impartial. *Agarwal v. Regents of the University of Minnesota*, 788 F.2d at 508. There is no question that the decisionmakers in the instant case, the Sheridan School Board, lacked impartiality because they had had *ex parte* contact with Turney concerning the specifics of this case. Turney gave the Board detailed and, Tolson maintains, largely false, incomplete and misleading information concerning the decision to terminate Tolson in the support information. Because the jury has found that Tolson was discharged without cause, it follows that the adverse information held by the defendants was false, incomplete, or misleading.

17. Not only did this violate Tolson's due process right of confrontation because he was not given this information, but the *ex parte* contact itself and the prejudice to Tolson's case flowing therefrom, also vio-

lated due process. It is improper for the decisionmaker to have access to information which the aggrieved party did not have. *Davis v. Alabama State University,* 613 F.Supp. 134, 138 (M.D.Ala.1985). Likewise, the impartiality of the Sheridan School Board was impermissibly tainted because of Turney's *ex parte* communication with it. Therefore, due process was violated.

■ 18. No liberty interest was involved here. The statements contained in the minutes which were published in the newspaper are the same kind as the statement at issue in *Robinson v. City of Montgomery City,* 809 F.2d 1355, 1356 (8th Cir. 1987) which was found to not be "... sufficiently stigmatizing to give plaintiff a liberty-interest right to a name-clearing hearing. No imputation of dishonesty, moral turpitude, or the like is involved."

■ 19. The defendant Sheridan School District can unquestionably be held liable for the due process violations in this case, *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and can be held accountable for any money judgment rendered against it. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

■ 20. Defendants Turney and Warmack should be held liable in their individual capacities because "their conduct ... [v]iolated clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The pre-termination hearing rights of public employees, *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and all other due process rights violated in this case, have been clearly established for well over a decade.

■ 21. Because *Loudermill* requires some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest, 105 S.Ct. at 1493, the appropriate remedy in this case is reinstatement and back pay until such time that Tolson is afforded a proper due process hearing. *Petrella v. Siegel,* 843 F.2d 87 (2nd Cir.1988). *Compare, Peery v. Brakke,* 826 F.2d 740 (8th Cir.1987).

■ 22. Tolson is also entitled to other compensatory damages for violations of his due process rights. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). He is entitled to damages for such subjective consequences as mental anguish and suffering. *See, Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Rogers v. Kelly,* 674 F.Supp. 1372 (E.D.Ark. 1987). The evidence of emotional and physical distress was amply set out at trial by Tolson and his wife, Jeanette, and justifies an appropriate and reasonable compensatory damage award of $1,500.00.

Accordingly, the Court finds that plaintiff's due process rights were violated by his termination without the proper hearings. He is entitled to reinstatement as a bus driver and his back pay to the date of reinstatement, offset by any amounts that he has earned or could have earned with the exercise of due diligence, until such time that he is afforded a proper due process hearing. If the parties are unable to agree upon the sum due plaintiff, the Court will schedule an immediate hearing on request to make this determination. Furthermore, he is entitled to compensatory damages as a result of the due process violations in the sum of $1,500.00.

IT IS SO ORDERED.

### JUDGMENT

In accordance with the separate Memorandum Opinion and Order filed this date, judgment is hereby entered in favor of plaintiff and against defendants on his claim that defendants violated his constitutional right to procedural due process in his termination, but judgment is entered in favor of defendants and against plaintiff on his claim that he was deprived of his liberty interest. Plaintiff is ordered reinstated with backpay awarded from the date of his termination to the date he is reinstated, less any sums earned or which could have been earned with the exercise of due dil-

igence, until such time as he is afforded a proper due process hearing. If the parties are unable to agree upon the sum due plaintiff, the Court will schedule an immediate hearing on the request in order to make this determination. Furthermore, plaintiff is awarded $1,500.00 for compensatory damages for the procedural due process violation.