No. 91-090

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

SCOTT T. MEDICINE HORSE,

              Petitioner and Appellant,

    -vs-

TRUSTEES, BIG HORN COUNTY SCHOOL DISTRICT
NO. 27, and NANCY KEENAN, Superintendent
of Public Instruction,

           Respondents and Respondents.



FILED

DEC 10 1991

Cal Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                  In and for the County of Lewis & Clark,
                  The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Emilie Loring; Hilley & Loring, Missoula, Montana

       For Respondents:

       James L. Vogel, Attorney at Law, Hardin, Montana
       Beda Lovitt, Office of Public Instruction, Helena,
       Montana

Submitted on Briefs:  August 1, 1991

Decided:  December 10, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, Scott T. Medicine Horse (Medicine Horse), appeals from a judgment entered by the District Court of the First Judicial District, Lewis and Clark County, affirming a decision by State Superintendent of Public Instruction Nancy Keenan. We affirm.

The issue before this Court is whether the District Court erred in affirming the State Superintendent of Public Instruction's decision that Medicine Horse was an "at will" employee who received the process due him upon his discharge from employment.

Medicine Horse was employed as a custodian by Big Horn County School District No. 27 from 1984 to 1988. He worked without a written contract or agreement under Gary Greseth (Greseth), Principal of Non-instructional Affairs of Lodge Grass Public Schools. In August of 1988, Greseth began establishing a written record of Medicine Horse's work-related problems. Greseth determined that Medicine Horse needed additional supervision and instituted weekly meetings between himself and Medicine Horse in order to more closely monitor Medicine Horse's progress.

The appellant's job performance continued to deteriorate and on November 23, 1988, Greseth suspended Medicine Horse without pay for three days because of several incidents with a co-worker. Medicine Horse did not appeal this action.

Greseth's duties included the scheduling of janitors' workshifts. On either December 16 or 19, 1988, Greseth posted a

Christmas vacation work schedule. This schedule included a shift change for Medicine Horse and others. The shift change was to begin on December 21, 1988.

Medicine Horse was on sick leave December 16 and 19. On December 20, Greseth found a note from Medicine Horse on his door stating that Medicine Horse would work his usual 8:00 a.m. until 4:00 p.m. shift instead of the later shift to which Greseth had assigned him. Greseth showed this note to Superintendent Bert Corcoran. Both men determined that the note amounted to insubordination. Greseth claims he spoke to Medicine Horse on December 20 and informed him at that time that he would recommend immediate termination of Medicine Horse at the school district trustees' meeting that night. Medicine Horse claims that he was at two doctor appointments in Billings all day December 20, 1988, did not speak to Greseth on that day, and had no idea that Greseth intended to recommend his termination. Medicine Horse contends that he arrived for work at his new shift time, 2:00 p.m., on December 21, 1988, to find that he had been terminated by the trustees at their December 20, 1988 meeting.

Medicine Horse requested, and was granted, a hearing by the trustees which took place on January 17, 1989. The trustees took no action following this hearing and his discharge remained in effect. Subsequently, Medicine Horse appealed to the Big Horn County Superintendent of Schools as provided in § 20-3-210, MCA. The County Superintendent affirmed the discharge on the basis that

3

Medicine Horse was an "at will" employee. Following the directives of § 20-3-107, MCA, Medicine Horse next appealed to the State Superintendent of Public Instruction; she upheld his discharge and status as an "at will" employee. Medicine Horse then sought judicial review under the Montana Administrative Procedure Act. The District Court affirmed the State Superintendent of Public Instruction.

This appeal centers on Medicine Horse's contention that he was denied due process of law because he did not have written notice of the reasons for his termination or of the termination itself, and was not provided a pretermination hearing. The appellant contends that he was a permanent employee and, thus, had a property interest in his employment. The respondents claim Medicine Horse was an "at will" employee, had notification of the trustees' consideration of his termination before the meeting at which he was terminated, and received the post-termination hearing he requested even though that hearing was entirely discretionary with the trustees.

We note at the outset that the issues for review at both the District Court and this Court are conclusions of law; all parties agree that the appropriate standard of review is contained in § 2-4-704, MCA. We have clarified in recent cases that under § 2-4-704, MCA, our standard of review relating to conclusions of law, whether the conclusions are made by an agency, workers' compensation court, or trial court, is whether the tribunal's interpretation of the law is correct. Steer, Inc. v. Department of

4

Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603; see also GBN, Inc. v. Montana Department of Revenue (Mont. 1991), 815 P.2d 595, 596-97, 48 St.Rep. 715, 716.

## AT WILL

Respondent Big Horn County School District (School District) argues that Medicine Horse is an "at will" employee and is governed by the Montana "at will" statute:

> **Termination at will.** An employment having no specified term may be terminated at the will of either party on notice to the other. . . .

Section 39-2-503, MCA. We have concluded that an "at will" employee is one whose term of employment has no specific duration. Hobbs v. Pacific Hide and Fur Depot (1989), 236 Mont. 503, 771 P.2d 125. Medicine Horse has provided no evidence that his employment had any specified term. His employment was not governed by a contract which specified the duration of his employ, nor do the laws and regulations governing his position as an employee of the School District specify any such term.

Quoting from a 1984 article in the Montana Arbitrators Association Quarterly, the appellant contends that the doctrine of "at will" employment is no longer viable in Montana. While that may have appeared to the author to be the case in 1984, we disagree that such is the state of the law in Montana. In Prout v. Sears, Roebuck and Co. (1989), 236 Mont. 152, 772 P.2d 288, we applied the "at will" statute to persons who have no specific term to their employment. And while Prout was decided on the basis of pre-

5

Wrongful Discharge From Employment Act law, neither that Act nor any other action by the Montana legislature or this Court has nullified the "at will" designation or § 39-2-503, MCA.

We hold that Medicine Horse is an "at will" employee who had no specific duration or term for his employment with the School District.

## NOTICE

The appellant argues that even if he is an "at will" employee he was still entitled to notice. This Court has interpreted the "at will" statute to mean that notice prior to termination is not required. Prout v. Sears, Roebuck and Co. (1989), 236 Mont. 152, 772 P.2d 288; Gates v. Life of Montana Insurance Co. (1982), 196 Mont. 178, 638 P.2d 1063. We hold that Medicine Horse was not entitled to prior notice of his termination under the Montana "at will" statute.

The appellant next argues that he was entitled to notice of the reasons for his discharge because the School District's policy "did not give the Superintendent authority to suspend or terminate without giving the employee the reasons for such action. . . . " The policy does not require the Superintendent to provide reasons for termination:

SUSPENSION AND DISMISSAL OF NON-CERTIFIED STAFF

Non-certified Staff members are employed by the Superintendent subject to review by the Board of Trustees. They may be suspended at any time by the Superintendent. Non-certified employees may be terminated at any time by the Superintendent however employees may request the Board of Trustees to review the

6

process of a pretermination hearing.

Procedural due process, which the appellant claims entitled him to a pretermination hearing, is required only when the rights of liberty and property protected by the Fourteenth Amendment have been infringed. Akhtar, 197 Mont. at 210, 642 P.2d at 152. In Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, the United States Supreme Court held that a public employee is entitled to procedural due process if he or she has a property right in continued employment. Once a property interest is determined to exist, procedural due process mandates a hearing before termination. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503-504.

A property interest in one's position must be created by existing rules or regulations, state laws, or understandings between employee and employer. Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. This Court has adopted the Roth reasoning and prerequisites to a property interest. Akhtar, 197 Mont. at 211, 212, 642 P.2d at 153. Medicine Horse presented no written contract, state law, or regulation specifically stating or otherwise indicating that he had a property interest in his position as custodian. The written policy quoted earlier states that a non-certified employee, like Medicine Horse, can be terminated any time and that a hearing may be provided to the employee at the discretion of the trustees; that policy does not support the appellant's claim of a property

8

interest in his position. Nor do any rules or school regulations mandate that a hearing granted by the trustees must occur before a discharge; indeed, the referenced policy makes it clear that any such hearing would occur after the termination.

Medicine Horse's subjective belief that he had a property interest in his job does not create such a property interest. A subjective expectancy creates no constitutionally protected interest. Perry v. Sindermann (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. A "mutually explicit understanding" between the parties can lead to a property interest. Perry, 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580. Here, however, the written School District policy regarding discharge of non-certified employees and the progressive discipline in which Medicine Horse was involved do not support the existence of such a mutually explicit understanding.

Medicine Horse also argues that he had a property interest in his position because his probationary period was over and he worked for the School District in excess of four years; thus, he asserts that he had a reasonable expectation that his job would continue. Medicine Horse would have this Court equate the "permanency" of employment that comes with passing a probationary period with a property interest in one's employment. Both this Court and the United States Supreme Court have rejected this argument.

We considered whether length of employment gives rise to a property interest in Reiter v. Yellowstone County (1981), 192 Mont.

9

194, 627 P.2d 845. There, a custodian with eighteen years of employment with the school district was not provided with a hearing upon discharge. We held that he had no property interest in his position by virtue of his years of service, absent a contractually specified term of employment. The Reiter holding relied on a United States Supreme Court case involving a police officer who had passed his probationary period and was considered permanent. The Supreme Court held in that case that the police officer had no property interest in his position and that his position was continued at the will of the city. Bishop v. Wood (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684.

The appellant relies heavily on Tolson v. Sheridan School Dist. (E.D. Ark. 1988), 703 F.Supp 766. In Tolson, a bus driver sued the school district claiming his due process rights had been violated at the time of his discharge. Tolson had experienced discipline problems with the students on his bus and reported this to the district. On the day he made his report, Tolson returned to his home after doing errands and found his school bus, previously parked in front of his house, gone. Subsequently, he discovered that the district had sent someone to retrieve it and that he had been fired. The court held that Tolson's due process rights were violated when he was not given adequate notice and an opportunity to be heard.

The appellant's reliance on Tolson is misplaced. Tolson had a contract with the district for a specific term. In addition, the

10

parties in the <u>Tolson</u> case stipulated that Tolson had a property interest in his employment contract within the meaning of the Due Process Clause of the Fourteenth Amendment. Given this stipulation, the issue of whether Tolson did or did not have a property interest in his position was not before the court.

In light of our holdings that Medicine Horse was an "at will" employee who had no property interest in his position, we find no error by the District Court.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Scott Medicine Horse testified that he was not at work on December 20, 1988, and was not notified of the school board meeting at which his termination was to be discussed. It is undisputed that the agenda for that meeting did not include notice to Medicine Horse or anyone else that his termination would be a subject of discussion. Even after the meeting and his termination, he was not given reasons for his termination or an opportunity to respond to those specific reasons at the subsequent meeting at which he appeared. Neither the County Superintendent, the State Superintendent, nor the District Court resolved the factual dispute regarding notice because all arrived at a legal conclusion that Medicine Horse was an employee "at will" and was not entitled to due process prior to his termination.

This Court concludes that because the school district had a written regulation providing for its employees' termination at any time that Medicine Horse had no property interest in his employment. However, if the determination of who does and who does not have a property interest in employment is going to be left to employers, then the due process requirement of the Fourteenth Amendment to the United States Constitution is meaningless.

I find it incredible that through the cumbersome intellectual process known as legal analysis courts have concluded that a person receiving welfare benefits has a "property interest" in the

12

continued receipt of those benefits that is safeguarded by procedural due process. *See Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. However, this man had no "property interest" in the government job he had performed for four and one-half years and which was his sole means of providing food, clothing, and housing for himself and his family.

I agree with the dissent of Justice Marshall in *Board of Regents v. Roth*, 408 U.S. 564, 589, when he states that:

> Employment is one of the greatest, if not the greatest, benefits that governments offer in modern-day life. When something as valuable as the opportunity to work is at stake, the government may not reward some citizens and not others without demonstrating that its actions are fair and equitable. And it is procedural due process that is our fundamental guarantee of fairness, our protection against arbitrary, capricious, and unreasonable government action.

Mr. Justice Douglas has written that:

> "It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law." *Joint Anti-Fascist Refugee Committee v. McGrath, supra*, at 179 (concurring opinion).

However, it is not necessary to rely on Justice Marshall's dissent in *Roth*, to conclude that Medicine Horse had a "property interest" in his employment. In *Perry v. Sindermann*, 408 U.S. 593, 601-02, another employment case decided by the United States Supreme Court on the same date as *Roth*, the majority stated:

13

A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or *mutually explicit understandings* that support his claim of entitlement to the benefit and that he may invoke at a hearing. [*Roth*, 408 U.S. at 577.]

A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be "implied." 3A. Corbin on Contracts §§ 561-572A (1960). Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in the light of the surrounding circumstances." Id., at § 562. And, "[t]he meaning of the [the promisor's] words and acts is found by relating them to the usage of the past." [*Roth*, 408 U.S. at 577.] [Emphasis added.]

In this case, Medicine Horse had been employed by the school district for four and one-half years. He testified that he was a temporary employee for one year, but that after one year he was given permanent status which included sick leave, annual leave, vacation pay, and some expectation of permanency. He testified that he was given that expectation not only by another employee, but by John Pretty On Top, a member of the school board. No one testified to the contrary. The only other witness who testified before the County Superintendent about Medicine Horse's status was Gary Greseth. Greseth was the principal of noninstructional affairs who supervised Medicine Horse. He also testified that Medicine Horse was a permanent employee.

14

The majority relies on § 39-2-503, MCA, for its conclusion that Medicine Horse was an employee at will because he had no specified term. However, I would conclude that when an employee is advised that he is permanent, that is a specified term.

Furthermore, we have previously held in other circumstances that in spite of the language found in § 39-2-503, MCA, an employee can have a reasonable expectation of job security, based on representations by his employer, even though he has no specified term of employment. *See Dare v. Montana Petroleum Marketing Co.* (1984), 212 Mont. 274, 687 P.2d 1015. Although the specific cause of action authorized under *Dare* has been superseded by the Wrongful Discharge From Employment Act found at § 39-2-901, MCA, et seq., the principle remains that the effect of the at will statute is subject to alteration by the conduct of the parties to the employment relationship.

Because the employee in this case was led to believe that after a year of probationary employment he had achieved "permanent" status, I would conclude that his interest in his employment became a "property" interest for due process purposes based upon the "mutually explicit understandings" between the employee and his employer. Having reached that conclusion, the next question is, "what kind of 'due process' was he entitled to?"

The school district contends that because he was afforded an opportunity to contest his termination after the fact, Medicine

15

Horse received all the due process that he was entitled to. However, for obvious reasons, an after the fact hearing does not provide due process. For one thing, the decision that Medicine Horse was undesirable and should be terminated had already been made without his presence or input. Any further consideration of his value as an employee by the same board necessarily had to have been tainted by the board's concern for justifying its own actions. I am sure that this is one of the considerations the United States Supreme Court had in mind when it decided *Cleveland Board of Education v. Loudermill*, 470 U.S. 532. In that case, the court held that only pretermination input from the employee could satisfy the due process clause. The court concluded that where the employee had a property right in his employment, his employer could not dictate the terms of the due process to which he was entitled. Specifically, the court found that a post-termination opportunity to be heard was inadequate. The court stated:

> An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 94 L.Ed. 865, 70 S.Ct. 652 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 28 L.Ed.2d 113, 91 S.Ct. 780 (1971) (emphasis in original); see *Bell v. Burson*, 402 U.S. 535, 542, 29 L.Ed.2d 90, 91 S.Ct. 1586 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*,

16

408 U.S. at 569-570, 33 L.Ed.2d 548, 92 S.Ct. 2701; *Perry v. Sindermann*, 408 U.S. 593, 599, 33 L.Ed.2d 570, 92 S.Ct. 2694 (1972). As we pointed out last Term, this rule has been settled for some time now. *Davis v. Scherer*, 468 U.S. 183, 192 n. 10, 82 L.Ed.2d 139, 104 S.Ct. 3012 (1984); id., at 200-203, 82 L.Ed.2d 139, 104 S.Ct. 3012 (BRENNAN, J., concurring in part and dissenting in part). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond.

. . . .

The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.

*Loudermill*, 470 U.S. at 542, 546.

For Medicine Horse, his source of livelihood was at stake. A job he had performed for four and one-half years was on the line. The possibility of future employment had to have been adversely affected by the circumstances of his discharge.

It does not seem like too much to require that before that discharge he be given notice of the reasons and an opportunity to respond.

In this case, I conclude that Medicine Horse had a property interest in his employment and that, therefore, he was entitled to notice of the charges against him and an opportunity to respond to those charges prior to his termination as an employee. Since the County Superintendent, State Superintendent, and District Court have all denied Medicine Horse's petition based on what I conclude

17

to be a misapplication of the Constitution, I would reverse the District Court.

_____
                          Justice

I concur in the foregoing dissent of Justice Trieweiler.

_____
                          Justice

18

December 10, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Emilie Loring
Hilley & Loring
500 Daly Ave.
Missoula, MT 59801

James L. Vogel
ATTORNEY AT LAW
P.O. Box 525
Hardin, MT 59034

Beda Lovitt
Chief Legal Counsel
Office of Public Instruction
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy