**BEXAR COUNTY SHERIFF'S CIVIL SERVICE COMMISSION, Petitioner,**

v.

**Fred G. DAVIS III, Respondent.**

**No. C–9249.**

Supreme Court of Texas.

Dec. 31, 1990.

---

Fred R. Jones, Gilbert Vara, Jr., San Antonio, for petitioner.

R. Robert Willmann, Charles D. Butts, Harry A. Nass, Jr., San Antonio, for respondent.

## OPINION

PHILLIPS, Chief Justice.

At issue is whether respondent, a public employee who could not be discharged except for cause, should have been provided with the names of his employer's witnesses before either his pretermination or his post-termination hearing. We hold that, under the facts of this case, the Constitution imposed no requirement on the government to notify the employee of the names of the witnesses against him prior to either his pretermination or post-termination hearing.

## FACTS

On September 17, 1985, Fred Davis, a captain in the Bexar County Sheriff's Department, received a "Notice of Proposed Dismissal," informing him that he was being dismissed from his position for violations of the Rules of the Bexar County Sheriff's Civil Service Commission. Specifically, the notice alleged that Davis had violated rules prohibiting "[s]exual [h]arassment," "[c]onduct or action that would seriously impair ·job effectiveness," and "[c]onduct which has proven to be detrimental or has an adverse affect on the Department." As the factual basis for these violations, the notice accused Davis of sexually harassing several, unidentified female employees and of engaging in "sexual encounters" at the Bexar County Courthouse with another woman, Debbie Windler. On September 19, Davis responded to the notice in a letter to the Sheriff, denying that he had violated any of the regulations or that he had engaged in any of the alleged conduct. In his letter, Davis also requested more specific details about the allegations, including the complainants' names. Davis was discharged on September 23, 1985, without yet having received a reply from the Sheriff. Subsequently, the Sheriff refused Davis's request for the complainants' names.

Davis appealed his discharge to the Bexar County Sheriff's Civil Service Commission as permitted under the Commission rules. The Commission held a formal hearing that occupied several partial days of testimony over a period of twenty-two

days. At the hearing, over Davis's objections that he had not received prehearing notice of the witnesses, four women testified that Davis had repeatedly sexually harassed them while they were employed by the Sheriff's Department. Debbie Windler, the witness identified in the pre-dismissal notice that Davis received, did not testify. Through his two attorneys, Davis cross-examined the Department's witnesses and presented eighteen witnesses on his own behalf. At the close of the hearing, the Commission upheld Davis's dismissal.

Davis appealed to the trial court,[1] which affirmed the Commission's order. Davis then successfully appealed to the court of appeals, which reversed the judgment of the trial court and remanded to the Commission on the basis that the Commission had violated Davis's federal procedural due process rights by failing to inform Davis of the names of the witnesses against him. 775 S.W.2d 807. The Commission then appealed to this court. For the reasons that follow, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

## PROCEDURAL DUE PROCESS REQUIREMENTS

 The Due Process Clause of the fourteenth amendment to the United States Constitution provides that an individual may not be deprived of certain substantive rights—life, liberty, and property—without constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985). An analysis of Davis's procedural due process claim thus requires a two-part inquiry: whether Davis was deprived of a protected interest and, if so, what process was due to safeguard that interest. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265, 273 (1982); *see also Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556–57 (1972).

In this case, the parties agree that Davis has a constitutionally protected property interest in continued employment with the Sheriff's Department.[2] The disputed issue concerns the process due Davis in order to protect this interest.[3] We start with the principle that due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 873 (1950). However, "[t]he very nature of due process negates any concept of inflexible

1. The trial court's review was under the substantial evidence standard. *See Heard v. Incalcaterra,* 702 S.W.2d 272, 275 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

2. The applicable Civil Service Rules provide that Davis may be dismissed only "for cause," Rules of Bexar County Sheriff's Civil Service Commission, Rule 2.43 (Mar. 14, 1985), and define what constitutes "cause." *Id.,* Rule 9.02. A "for cause" limitation on dismissal of a public employee creates an individual entitlement to continued employment that is considered a protected property right for purposes of the Due Process Clause. *Logan,* 455 U.S. at 430, 102 S.Ct. at 1155, 71 L.Ed.2d at 274.

3. The notice to Davis satisfied all statutory and administrative requirements, in effect at the time of his dismissal, none of which required prehearing notice to accused employees of the names of adverse witnesses. However, our inquiry does not end with these standards. "While the legislature may elect not to confer a property interest . . ., it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. . . . [T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." *Vitek v. Jones,* 445 U.S. 480, 490 n. 6, 100 S.Ct. 1254, 1262 n. 6, 63 L.Ed.2d 552, 563 n. 6 (1980) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15, 40–41 (1974) (Powell, J., concurring in part)). In the present case, Davis has requested relief under both the state and federal constitutions. However, although Davis points out that the state constitution "can . . . provide additional rights for their citizens," *LeCroy v. Hanlon,* 713 S.W.2d 335, 338–39 (Tex.1986), he does not present any argument that the due course guarantees of the Texas Constitution require different or additional procedural protections in connection with administrative termination hearings than does the Due Process Clause of the federal Constitution. Therefore, we consider here only whether the relief Davis seeks is required by the federal Constitution.

procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). The Supreme Court has instead identified three factors that must be considered in determining whether a requested procedure is necessary to provide due process to a terminated employee in any particular case:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976); *see also Logan*, 455 U.S. at 434, 102 S.Ct. at 1157, 71 L.Ed.2d at 277.

■ In applying this test, the Court has distinguished between *pre*termination hearings and *post*-termination hearings. *See Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. A terminated employee must be afforded an opportunity to present his version of the events both before and after termination; however, due process imposes different requirements at each stage because of the different interests present. *Duchesne v. Williams*, 849 F.2d 1004, 1006–07 (6th Cir. 1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989). Therefore, we consider the two separately.

## PRETERMINATION PROCEDURES

In *Loudermill*, the Supreme Court held that every terminated employee is constitutionally entitled to "some pretermination opportunity to respond" to the charges that form the basis for his dismissal. *Loudermill*, 470 U.S. at 542, 547–48, 105 S.Ct. at 1493, 1496, 84 L.Ed.2d at 504, 507. The Court reasoned that the employee's interest in retaining employment is significant and that, before termination, "some opportunity for the employee to present his side of the case is ... of obvious value in reaching an accurate decision." *Id.* at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504. The Court then balanced this interest against the government's interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens. The Court concluded that the government's interest does not completely outweigh the employee's interest in having an opportunity to respond. Thus, prior to any termination, the employer must furnish the employee with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. However, these procedures "though necessary, need not be elaborate," *id.* at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506, since requiring more than an informal opportunity to respond "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.

■ We hold that the notice and hearing that Davis received prior to his termination provided Davis with all the pretermination process that was due him under *Loudermill*. The notice specifically cited the regulation Davis had violated (proscribing sexual harassment), explained the basis for the charge (complaints filed by several female employees), and described the acts he allegedly performed and the statements he allegedly made to the women. Furthermore, Davis was given an opportunity to respond to the allegations before his discharge. Under these facts, we hold that Davis was not constitutionally entitled to the names of the women who filed complaints against him. The government's interest in being able to suspend an unsatisfactory employee before providing details of its investigation outweighed Davis's private interest in continued employment while he awaited his post-termination hear-

ing.[4] Furthermore, the existence of a post-termination hearing means that the decision not to provide Davis with the names of the government's witnesses before his termination did not increase the risk that the final decision would be erroneous.

## POST–TERMINATION PROCEDURES

In *Loudermill,* the Court premised its finding that an informal notice and opportunity to respond were sufficient before termination on the existence of "a full post-termination hearing." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The Supreme Court, however, has never imposed specific requirements on such a post-termination hearing. In particular, the Court has never held that a terminated employee must be provided with the names of complaining witnesses prior to the post-termination hearing. Therefore, we must apply the *Mathews* test to the competing interests at stake here to determine whether due process requires that Davis have received notice of the witnesses against him prior to his post-termination hearing. *See, e.g., Loudermill,* 470 U.S. at 542–43, 105 S.Ct. at 1493–94, 84 L.Ed.2d at 504.

■ We recognize, of course, that Davis's interest in retaining his job with the Sheriff's Department is significant. *Id.* at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504. Under the specific facts of this case, however, the risk of erroneous termination because Davis did not receive advance notice of the names of the witnesses against him,

as well as the probable value of such notice, is slight. The notice actually provided to Davis, along with the rights granted him to confront and cross-examine the government's witnesses and to present his own witnesses, guaranteed that all relevant matters were adequately presented for consideration by the decision-making body. Before his hearing, Davis was provided with a statement of the charges against him and a brief description of the government's evidence. At the hearing, all the employer's witnesses testified in Davis's presence and Davis extensively cross-examined each of them. After the government had presented its case, Davis called eighteen of his own witnesses and even recalled two of the complainants who had testified for the government.

Davis's claim that he was unable to prepare an adequate defense without advance knowledge of the government's witnesses is simply not supported by the record. Even though he did not know the exact identities of the complainants, Davis knew that they had to be women who had been employed in his office during the time period in question.[5] During the first day of testimony, Davis's attorney admitted that he had prepared for each of these possible witnesses before the hearing. Because the hearing extended over several weeks and occupied only parts of a few days of each week, Davis had additional time to prepare his defense as the government's case unfolded. Had Davis needed more time, he had the right to request a continuance, which he did not do. The record demon-

---

4. Although the Sheriff's Department does not assert such an interest in this case, a government employer may also have a substantial interest in preserving, pretermination, the confidentiality of sexual harassment complainants to protect them from the accused employee. If the identities of complainants were revealed while the alleged harasser remained at the workplace, the complainants might be subject to retaliatory action by the accused employee, who often is a superior with significant control over their working conditions. *See* Subcomm. on Investigations of the House Comm. on Post Office and Civil Service, 96th Cong., 2d Sess., Sexual Harassment in the Federal Government 12, 23 (Comm.Print 1980) (reporting harassment may subject victim to retaliation). For this reason, promising confidentiality may be necessary in order to en-

courage employees to report harassing behavior. *See* BNA Personnel Policies Forum, Sexual Harassment: Employer Policies and Problems 19 (PPF Survey No. 144, 1987) ("an employee may feel that lodging a complaint against senior management could 'make my life miserable,' if the complaint is brought out in the open"). Since the government employer must rely upon its employees to report such conduct, the government has a considerable interest in being able to ensure complainants that their identities will remain confidential.

5. At the time of the hearing, eight women were employed as clerks in the warrant section where Davis worked. Four of these women testified against Davis at the hearing.

strates that Davis's attorney conducted able and well-informed cross-examination of the witnesses, asking each witness specific questions about incidents in which she had been involved and repeatedly testing each witness's credibility. Indeed, the Commissioners remarked that Davis's attorney seemed extraordinarily well prepared. Therefore, we conclude that Davis's hearing was sufficiently comprehensive to ensure that the lack of advance notice of witnesses did not create a significant risk of erroneous termination.

Finally, the government has an interest in not being required to provide the names of its witnesses before the hearing. An inviolable disclosure requirement would subject the government employer to additional administrative burdens and legal costs and would preclude an employer from producing additional or substituted witnesses at a hearing. In some cases, the government may reasonably conclude that post-termination confidentiality is necessary to ensure the unfettered testimony of the witnesses or to encourage future cooperation with government authorities.[6]

Given these considerations, we hold that the government's interests in flexibility, informality, and economy in this case outweigh Davis's interest in receiving advance notice of the names of the witnesses against him. Under these facts, notice to Davis would have placed additional burdens on the government without perceptibly increasing the accuracy of the decisionmaking process. Due process does not require that every administrative proceeding contain the full procedural framework of a civil trial. "[D]ue process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed." *Gagnon v. Scarpelli*, 411 U.S. 778, 788, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 665 (1973). Even in the criminal context, the Supreme Court has noted that the lengths to which the government must go to protect individual rights are not without limits. *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 442 (1979); *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281, 291 (1977). We therefore hold that Davis's post-termination due process rights were satisfied.

■ We recognize that there may be some circumstances in which the Constitution would require notice of adverse witnesses after termination. In cases where the number of possible complainants is large, where the hearing is brief, where there is not adequate opportunity to cross-examine and prepare a defense, or where the employee is obviously surprised by his employer's witnesses, due process might well require that the employee receive pre-hearing notice of the witnesses against him or a continuance of the hearing to prepare his defense. However, on the facts before us, we decline to hold that advance notice of witnesses is always constitutionally mandated.[7]

Although this case-by-case approach does not provide a bright line with certain answers for government employers and employees, such ambiguity is, we believe, often inherent in the nature of due process. " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. at

---

**6.** Such government interests are apt to be particularly strong in sexual harassment cases. Some studies have shown that sexual harassment complainants may be subject to harassment, ridicule, or retaliation from other coworkers even after the offending employee has been dismissed and fears of such future harassment may chill reporting. *See* Subcomm. on Investigations of the House Comm. on Post Office and Civil Service. 96th Cong., 2d Sess., Sexual Harassment in the Federal Government 13 (Comm.Print 1980) (women are hesitant to file complaints because they may be subject to "embarrassment and harassment from the coworkers of the man against whom they have made the charges, and from other women who feel that the complainants brought it on themselves"). We note, however, that the Sheriff's Department has not asserted such an interest in this case.

**7.** We do not, of course, endorse the Kafkaesque proceedings "shrouded in mystery" against which the dissenting opinion warns. We hold only that the plaintiff in this case received all the process due him under the United States Constitution.

895, 81 S.Ct. at 1748, 6 L.Ed.2d at 1236 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162–63, 71 S.Ct. 624, 643, 95 L.Ed. 817, 849 (1951) (Frankfurter, J., concurring)); *see also Lassiter v. Department of Social Servs.*, 452 U.S. 18, 31–32, 101 S.Ct. 2153, 2162, 68 L.Ed.2d 640, 652 (1981) (refusing to hold that due process requires that an indigent person be represented by appointed counsel in every parental termination proceeding). Government employers should not be compelled to release names of complainants in every case simply for the sake of certainty. It may even be that, in most situations, there is little reason to withhold such notice. But good practice alone is also not sufficient justification for constitutionalization of a requirement. "A wise public policy ... may require that higher standards be adopted than those minimally tolerable under the Constitution." *Lassiter*, 452 U.S. at 33, 101 S.Ct. at 2163, 68 L.Ed.2d at 654.

Some lower federal courts, in enumerating specific procedural safeguards, have suggested that advance notice of witnesses is invariably required to satisfy due process. *See Agarwal v. Regents of the Univ. of Minn.*, 788 F.2d 504, 508 (8th Cir.1986); *Levitt v. Univ. of Tex.*, 759 F.2d 1224, 1228 (5th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985); *Ferguson v. Thomas*, 430 F.2d 852, 855–56 (5th Cir. 1970); *Tolson v. Sheridan School Dist.*, 703 F.Supp. 766, 772 (E.D.Ark.1988). While we do not quarrel with the particular *results* reached in any of these cases, we do not agree that due process always requires prehearing notice of witnesses. *See, e.g., Wells v. Dallas Indep. School Dist.*, 793 F.2d 679, 683 (5th Cir.1986).[8] To read the Constitution as imposing an obligation where none is required is just as surely wrong as to excuse a requirement that is mandated by the Constitution. *Cf. Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 576 (1975) ("[A] State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.") (emphasis in original). Until the Supreme Court holds that advance notice is always required, we decline to do so. Under the *Mathews* balancing test, we conclude that advance notice of adverse witnesses was not required in this case before either the pretermination or post-termination hearing.

Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court upholding Davis's dismissal.

Dissenting opinion by DOGGETT, J., joined by RAY, MAUZY and HIGHTOWER, JJ.

DOGGETT, Justice, dissenting.

I concur in the court's analysis of the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine that due process did not mandate that Davis be provided the names of his accusers *prior* to termination of his employment. The government's interests in the prompt removal of unsatisfactory employees and in the protection of complainants against retaliation by the accused are especially strong in the pretermination stage under the particular circumstances presented here. The analysis of interests, however, shifts significantly once the employee has been terminated, and it is here that I definitely part company with

---

**8.** In holding that a terminated school district employee did not need the names of witnesses or summaries of their testimony in advance of his post-termination hearing, the Fifth Circuit reasoned that

[w]hen an administrative termination hearing is required, federal constitutional due process demands either an opportunity for the person charged to confront the witnesses against him and to hear their testimony or a reasonable substitute for that opportunity. One who is present, who sees and hears the witnesses against him, has notice of who they are and what they maintain before he must meet them with his case; his confrontation rights are satisfied.... When, as here, the adjudicator acts on the sole basis of testimony produced at a hearing at which the accused is present, then by the time the accused must present his case he has necessarily already heard the witnesses' names and the substance of their testimony.

*Wells*, 793 F.2d at 683.

the court. Because due process required that Davis be provided the names of the complainants prior to his post-termination hearing, I dissent.

In ascertaining whether notice is required during the termination proceedings, the court correctly refers to "three distinct factors" used to measure the constitutionality of procedures:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33 (1976); *see also Zinermon v. Burch,* — U.S. ——, 110 S.Ct. 975, 984, 108 L.Ed.2d 100, 115 (1990). Applying these factors to Davis's post-termination hearing, the requirements of due process were not met.

First, an individual's interest in retaining employment is substantial at all stages of the termination proceedings.[1] The Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood," and has noted that "[w]hile a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494, 504 (1985) (citations omitted); *see also FDIC v.*

*Mallen,* 486 U.S. 230, 243, 108 S.Ct. 1780, 1789, 100 L.Ed.2d 265, 280 (1988).

Second, the risk of an erroneous deprivation increases when an employee is not advised of the complainants' identities. The record reflects that Davis learned which specific individuals would testify against him only as each took the witness stand at the Commission's hearing and that the sole person identified to him never appeared. The court ignores this handicap, focusing instead on the length and depth of the defense offered at the hearing, as well as the availability of cross-examination. The fact that Davis's attorneys were able to mount a creditable defense even though deprived of advance notice of the names of his accusers does not remove the impediment that affected the ability of counsel to prepare. Even the very best player at blind man's bluff is still blindfolded.

Third, I agree that the employer may have a significant interest in non-disclosure prior to termination,[2] where the complainants are co-workers, to minimize disruption in the work place.[3] Refusing to identify such persons protects co-workers reporting allegedly unacceptable behavior from harassment and retaliation. This justification in non-disclosure, however, is significantly diminished after termination.

By deciding that pretermination procedures "though necessary, need not be elaborate" when a prompt post-termination hearing is available, the Supreme Court recognized a continuum of rights and interests. *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (1985). At the beginning, during the pretermination stage, the employer has much more latitude, since its interests in avoiding workplace disruption are usually more signifi-

---

**1.** While not contested here, "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494, 507 (1985); *see also Barry v. Barchi,* 443 U.S. 55, 74, 99 S.Ct. 2642, 2654, 61 L.Ed.2d 365, 381 (1979) (Brennan, J., concurring).

**2.** This will not, however, be invariably true under all circumstances. Where complaints resulting in dismissal do not originate from co-workers the employer may not be able to show

a significant interest in denying pretermination notice identifying accusers.

**3.** Disruption could potentially ensue if co-workers were made known as complainants prior to the termination of a wrongdoer. To eliminate sexual harassment from the workplace, the state must rely upon its employees to report this unacceptable conduct. If such pretermination identification was required, the potential exposure to abuse from the accused would frustrate efforts to discourage misconduct.

cant. At the end—after termination—the interest of employees in a full and fair resolution of charges against them is paramount; any interest of the employer in secrecy can rarely be justified.

Although informing the accused of the names of the accusers was not specifically addressed in *Loudermill*, the court of appeals properly relied on the reasoning of that opinion to support such a requirement. 775 S.W.2d at 810.[4] A similar conclusion was reached in *Hatcher v. Board of Public Education and Orphanage*, 809 F.2d 1546, 1554 (11th Cir.1987), in which the court concluded that notice of adverse witnesses is constitutionally mandated prior to a post-deprivation hearing. To the same effect is *Tolson v. Sheridan School Dist.*, 703 F.Supp. 766, 772 (E.D.Ark.1988), outlining procedural steps necessary to satisfy due process:

> Regardless of whether pre-termination proceedings are adequate, the equivalent of a full evidentiary hearing is necessary either pre or post-termination in order to meet the demands of due process. *Loudermill*, 105 S.Ct. at 1496.
>
> At a minimum, to support the termination of a governmental employee who possesses a property interest, the employer must provide to the employee ... notice of both the names of those who have made allegations and the specific nature and factual basis for the charges....

Other cases recognize that prehearing identification of complainants is a "minimal" due process requirement. *Levitt v. Univ. of Tex.*, 759 F.2d 1224, 1228 (5th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985); *Brouillette v. Board of Directors of Merged Area IX*, 519 F.2d 126, 128 (8th Cir.1975); *see also Agarwal v. Regents of Univ. of Minn.*, 788 F.2d 504, 508 (8th Cir.1986).

Examining these cases, the court states that it "do[es] not quarrel with the particular results reached," 802 S.W.2d at 665, yet strangely it refuses to follow them because purportedly the flexibility of due process must be preserved. I would hold that federal due process requires identification of complainants at a reasonable time before the post-termination hearing except in those rare circumstances where the employer satisfies the burden of showing a specific and substantial interest in protecting the anonymity of the accusers. This approach would allow flexibility, but it would be flexibility within meaningful constitutional constraints.

Any governmental interest in secrecy cannot be merely presumed or supposed into being as the court attempts to do here; rather it must be established in the record. While the court concedes that usually "there is little reason to withhold such notice," 802 S.W.2d at 665, in this particular case there is no reason. The Bexar County Sheriff's Department offered no evidence that any interest would have been jeopardized by identifying the accusers after Davis's discharge but prior to the Commission's hearing. Absolutely nothing in the record or even the argument of counsel indicates that providing Davis a list of these names would have resulted in the slightest "additional administrative burdens and legal costs." 802 S.W.2d at 664. With regard to any governmental interest that must be considered in a due process evaluation of procedures under *Mathews*, here the court conveniently substitutes presumption for proof. In so doing, it reinforces government's natural tendency toward secrecy.

By advising employees before the post-termination hearing of the names of complainants, the public employer substantially decreases the risk of an erroneous deprivation. Providing this information to employees promotes the true governmental interest by facilitating the full development of relevant facts and detecting attempts to color the truth. As a result, the govern-

---

**4.** My analysis differs somewhat from that of the court of appeals, which concluded that these names should have been included in the pretermination "Notice of Proposed Dismissal." Under the particular circumstances of this case, identification is not constitutionally mandated in the pretermination notice, but need only be furnished at a reasonable point before the post-termination hearing.

ment's ultimate decision is founded upon the merits, not the unexpected.

Prehearing notice of the names of the accusers is a fundamental element of due process. It has long been recognized that a person surprised is half beaten. With no information as to the source of allegations, the person charged with wrongdoing cannot be prepared to challenge the credibility of witnesses, develop inconsistencies, or gather rebuttal evidence. Due process demands that termination procedures be more than some Kafkaesque tale[5] in which the query "who is accusing me of this?" is answered only by "we'll tell you when you get there." A proceeding in which valuable rights will be denied should not be shrouded in mystery or converted into a contest by surprise. The right to cross-examine a witness cannot substitute for constitutionally required notice; rather notice is a predicate to meaningful cross-examination.

Certainly, sexual harassment of the type alleged against Davis is unacceptable. Without proper procedures, however, a public employer could dismiss on manufactured charges an innocent employee for any number of reasons including rejection of improper advances by a supervisor. Constitutional due process is blind to those entitled to receive its protection; it does not draw a line between the justly and unjustly accused. Rather, it applies to those deprived by government of a protected interest without sufficient notice to present a proper defense.

Nor is today's opinion truly fair to employers. Public entities today learn only that "due process might well require" releasing names of complainants in many, but not all, situations. 802 S.W.2d at 664. In attempting to interpret and apply the court's opinion, one about to terminate an employee cannot with any assurance determine whether notice is required. For any prudent employer, the court may, as a practical matter, have produced the same result as that which would be achieved by holding that due process was violated by failing to notify the accused employee of the identity of the accusers. Courts must now examine the adequacy of procedures on a case-by-case basis. The potential for reversal of the termination proceedings and reinstatement of employees with back pay,[6] for the failure to complete the hardly burdensome task of identifying complainants, will most likely cause prudent employers to adopt what the court itself terms the "good practice" of providing the names in termination cases. 802 S.W.2d at 665. Although denying that it has done so, the court has in effect constitutionalized a notice requirement, but it is one that involves an unacceptable level of uncertainty. The court's hesitancy and ambivalence is a disservice to employees and employers alike.

An apparent need to await further instructions from Washington is offered as final justification by the court for having disregarded the better reasoned federal authorities cited above to reach a result for which the record provides no support. In essence, today's decision would resolve questions of constitutional rights against the citizen and in favor of the government whenever the precise issue has not previously weaved its way through the judicial processes and been the subject of writing by the highest court in the land.[7] Surely

---

5. Charged on grounds unstated, accused by persons unknown, and tried in courts he cannot locate, Joseph K., a character depicted by Kafka, asks about this system cloaked in secrecy:

 [T]hough I am accused of something, I cannot recall the slightest offense that might be charged against me. But that even is of minor importance, *the real question is, who accuses me?*

 F. Kafka, *The Trial* 16 (1937) (emphasis supplied).

6. I do not reach the question of whether Davis should be reinstated with back pay. Only if,

after a procedurally correct hearing, it had been properly determined that he was fired without just cause would this have become an issue appropriate for consideration.

7. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 576 (1975), the only authority cited for this proposition, offers support only for a more limited and correct view that when the Supreme Court addresses an issue and "*specifically* refrains from imposing" a particular requirement, state courts may not impose greater restrictions under the federal constitution. (emphasis supplied).

proper reliance upon Supreme Court precedents does not require that we must inevitably defer to its silence. Indeed, I believe the state courts share an important responsibility in assisting the federal judiciary to shape the fundamental constitutional fabric of our country. The court deprives Texas a voice in that basic process. Unlike today's opinion, I prefer a little more Texas thinking to be available in Washington instead of waiting for Washington to think for Texas.

Urging that too much due process would be "just as surely wrong" as too little, 802 S.W.2d at 665, the court approves a standard of deference to government—at the expense of the individual—that undercuts the framers' carefully crafted controls:

> If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.

*The Federalist No. 51*, at 337 (A. Hamilton or J. Madison) (Bicentennial ed.1976). The slightest erosion of these protections eventually destroys the foundation of all.

RAY, MAUZY and HIGHTOWER, JJ., join in this dissent.