**The CITY OF HOUSTON, Appellant,**

v.

**David F. ANDERSON, Russell L. Cerda, and Scott P. Becker, Appellees.**

**No. 01–91–00137–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 1, 1992.

Rehearing Denied Nov. 19, 1992.

**450**

Clarence A. West, City Atty., John E. Fisher, Senior Asst. City Atty., Luke L. Daniel, Asst. City Atty., Houston, for appellant.

D. Reid Walker, Edward L. Lasof, Houston, for appellees.

Before DUGGAN, WILSON and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

Appellant, the City of Houston (the City), appeals the judgment reversing the Civil Service Commission's order that had affirmed the suspension of the appellees, David F. Anderson, Russell L. Cerda, and Scott P. Becker, from the City's police department. We reverse.

Appellees were suspended from duty on March 18, 1985, by then Chief of Police Brown, for using excessive force in handling a suspect who was in custody. Appellees Becker and Cerda were given indefinite suspensions and Anderson was suspended for 30 days. All three appealed their suspensions to the Firemen and Policemen's Civil Service Commission, and, after a hearing on April 12, 1985, the commission upheld the actions taken by the chief of police, in an order dated April 17, 1985. Appellees, pursuant to former article 1269m,[1] filed suit against the City on April 26, 1985.

After a bench trial, the trial court signed a final judgment on December 14, 1990, in favor of the appellees. The trial court found there was "no substantial evidence ... to support the suspension," and that the appellees "were denied due process in the imposition of their suspensions." The trial court's order (1) set aside the commission's orders, (2) reinstated the appellees with back pay, full benefits, and seniority, (3) directed that all mention of the suspensions be expunged from the appellees' records, and (4) awarded the appellees damages and attorney's fees. The City appealed.

■ In its first two points of error, the City asserts the trial court lacked jurisdiction to hear appellee Becker's case because he failed to timely perfect his appeal to the district court within the 10–day period following the issuance of the commission's order. Specifically, the City contends that although Becker timely filed a petition that raised a complaint about "a 30–day suspension," he did not complain about his "indefinite suspension" until his amended petition, thereby failing to invoke the jurisdiction of the district court by failing to state the basis of the appeal, as required by article 1269m, section 18.

Section 18 of article 1269m provided that police or fire department personnel, who were dissatisfied with a decision of the civil service commission, were required to file a petition in district court within 10 days after the rendition of the final decision of

---

1. Tex.Rev.Civ.Stat.Ann. art. 1269m was repealed by Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987, Tex.Gen.Laws 707, 1306 and recodified at Tex.Local Gov't Code Ann. § 143.001 (Vernon 1988). References to article 1269m in this opinion are to the version in effect in 1985.

the commission, asking that the order be set aside, that the person be reinstated, and that such case be tried de novo.[2] TEX.REV. CIV.STAT.ANN. art. 1269m, § 18. Becker's timely filed original petition made these requests. It is true that Becker's original petition mistakenly recites the terms of the punishment assessed on March 18, 1985, as a "30–day suspension," rather than the "indefinite suspension" he actually received; however, the prayer does ask "that the decision of the commission be set aside." Becker's original petition complied with the statutory requirements. We hold Becker timely perfected his appeal and the trial court therefore had jurisdiction to hear the case.

We overrule the City's first two points of error.

In its third point of error, the City asserts the trial court erred in holding there was not substantial evidence to support the commission's orders.

■ Section 18 of article 1269m provided that a decision by the civil service commission may be appealed for a trial de novo in district court, but case law has interpreted this to mean a review under the substantial evidence rule. *Firemen's & Policemen's Civil Serv. v. Brinkmeyer*, 662 S.W.2d 953, 955 (Tex.1984). Therefore, trial de novo in this context means "a trial to determine only the issues of whether the agency's ruling is free from the taint of illegality and is reasonably supported by substantial evidence." *Brinkmeyer*, 662 S.W.2d at 955–56; *Fire Dep't. of City of Fort Worth v. City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664, 666 (1949).

■ The reviewing district court, in determining whether there is substantial evidence to support an agency's decision, determines whether reasonable minds could have reached the same conclusion the agency reached. *Dotson v. Texas State Bd. of Medical Examiners*, 612 S.W.2d 921, 922 (Tex.1981). Substantial evidence

is more than a mere scintilla but less than a preponderance of the evidence; therefore, the evidence may preponderate against the agency's decision but still amount to substantial evidence. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984). The trial court may not substitute its judgment for that of the agency, where there are controverted issues of fact. *Brinkmeyer*, 662 S.W.2d at 956. The resolution of factual conflicts and ambiguities is the province of the administrative body and not the district court. *Valentino v. City of Houston*, 674 S.W.2d 813, 817 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The agency's decision must stand unless the evidence as a whole is such that reasonable minds could not have reached the conclusion reached by the agency. *Firemen's and Policemen's Civil Serv. Comm'n v. Bonds*, 666 S.W.2d 242, 244 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd w.o.j.).

■ The evidence before the trial court was as follows:

On or about October 2, 1984, appellees and other officers of the Houston Police Department arrested Andrew S. Jaszlics on two counts of assault and public intoxication at the Texas Cowgirls Club. Three written statements, submitted by appellees to Chief Brown within a few days of the incident, all describe a confrontation in a small office with an intoxicated, cursing, obnoxious Jaszlics, who refused to pay his bar tab. According to the statements, once the amount of the tab was reduced, Jaszlics signed the bill. Jaszlics continued cursing, directing his comments not only to the management of the bar, but also to the police officers, and he was then placed against a wall by Anderson. Jaszlics hit the wall with both fists, knocking pictures off the wall. Cerda told Jaszlics he was under arrest for public intoxication and Jaszlics began to turn around, hitting Cerda in the shoulder with his elbow. Cerda

---

**2.** Former TEX.REV.CIV.STAT.ANN. art. 1269m, § 18, Act of June 16, 1981, 67th Leg. R.5., ch. 707, § 4(7), 1981 Tex.Gen.Laws 2626, 2630 provided:
In the event any Fireman or Policeman is dissatisfied with the decision of the Commis-

sion, he may, within ten (10) days after rendition of such final decision, file a petition in the District Court, asking that the decision be set aside, and such case shall be tried de novo.

and Becker shoved Jaszlics into the wall, face first. Cerda began hitting Jaszlics with his night stick, and Becker hit Jaszlics with his fists. Anderson tried to shove Jaszlics to the ground. Jaszlics got up and ran into the hallway, where he was handcuffed by Cerda and Becker, after again being pushed to the ground. Jaszlics complained that the handcuffs were too tight, but the officers did not adjust them.

Cerda and Becker both admitted getting angry and upset. Becker admitted that he kicked Jaszlics at one point, and later in the night approached Officer Diehl, who had also been present during the altercation, and apologized for "overreacting." Cerda stated that, in retrospect, there may have been a "second recourse," and the incident may have been handled differently. However, neither felt the force used was unjustified, nor did they have any remorse about the incident.

A statement was also taken from Officer Diehl, who had originally reported the incident to internal affairs. Diehl said the incident started when Anderson, Cerda, and Becker were left in the office with the suspect. Becker called out for someone to shut the door to the office. While the club manager was doing so, Diehl saw Becker take a swinging kick at Jaszlics, which landed on the side of his head. Diehl said he reentered the office at that point. He said the three officers continued to argue with Jaszlics, stood him up, shoved him against the wall, and tried to search him.

Diehl said Cerda told Jaszlics at one point that if he did not stop resisting, Cerda would break his arm. Becker then shoved Jaszlics into Cerda, who then shoved Jaszlics against the wall and began to strike him. Anderson then pushed Jaszlics, and both Jaszlics and Cerda fell to the floor. Diehl said Jaszlics, who had been holding his personal papers, began to pick up the papers, and was kicked three times by Becker. It was at that point that Officer Ellerman came in with the reduced bill, which Jaszlics signed. Diehl said that as everyone began to leave the office, Cerda told Jaszlics, "I've had enough of this sh—," pushed Jaszlics into a chair, and hit

him three to four times with a night stick and two or three times with his fist. Cerda and Becker then kicked and shoved Jaszlics out of the office, down the hall, and put him in the police unit.

The trial court also heard live testimony from the three officers, admitting they struck and pushed Jaszlics, but the officers contended the use of force was necessary because he was fighting them. There was testimony that Jaszlics showed no sign of injury when he was jailed; that he did not complain about his treatment by the officers in interviews with investigators, even though he remembered being kicked and hit; that Jaszlics had returned to Massachusetts and did not wish to pursue civil rights charges against the officers; and that other officers, who had been present but did not personally witness the incident, testified that the force was not excessive, if Jaszlics had indeed assaulted the officers. Officer Diehl, who had witnessed the incident and reported it, also testified. He stated that the attack was without provocation, and that Jaszlics had not tried to resist the officers.

The day after the incident, Diehl reported the event to his immediate supervisor, Sergeant R.J. Cuevas, and they went to Lieutenant Birch to report the incident. Sergeant M. Angel conducted the investigation for Internal Affairs. His report was reviewed by Captain J.R. Goudy and Lieutenant W.A. Young, of Internal Affairs, who both stated it was their opinion that the officers used excessive force to effect the arrest. The report was turned over to the Administrative Disciplinary Committee, composed of Assistant Police Chief J.P. Bales, Field Operations Command; Assistant Police Chief B.K. Johnson, Investigative Operations Command; Assistant Police Chief R.G. McKeehan, Support Services Command; and Deputy Police Chief W.H. Gaines, Administrative Services Command. The committee recommended suspension.

On December 17, 1984, appellees made a written request to be advised of the charges against them and to have an opportunity to be heard by the administrative disciplinary committee. An assistant police

chief responded that the administrative disciplinary committee had met on November 20, 1984, and decided at that time to recommend disciplinary action against the officers.

The chief of police reviewed the statements of Cerda, Becker, and Anderson, and the recommendation of the committee. He indefinitely suspended appellees Becker and Cerda, and suspended Anderson for 30 days. Appellees received notice of their suspension on March 18, 1985. The letters of suspension detailed the acts and conduct the appellees were being suspended for, as well as the rules and orders they had violated.

Appellees appealed their suspensions to the Civil Service Commission, according to the procedures in article 1269m, section 16, which provided:

> The commission shall hold a hearing and render a decision in writing within thirty (30) days after it received said notice of appeal. Said decision shall state whether or not the suspended officer or employee shall be permanently or temporarily dismissed from the fire or police department or be restored to his former position or status in the classified service in the department.[3]

The commission held a hearing on April 12, 1985, and on April 17, 1985, the commission issued a final order. The final order stated that the commission reviewed the letters of suspension of each officer, heard testimony and received evidence, and made the following findings and conclusions:

1. The cited instances and charges set out and contained in the letter of indefinite suspension dated March 18, 1985, from Chief of Police Lee P. Brown [to the commission] are true and correct, and represent a sufficient basis for such indefinite suspension.
2. Such indefinite suspension should in all things be upheld and sustained.

The commission then ordered the action of Chief of Police Brown upheld and sustained. Appellees filed petitions in the district court within 10 days of the commission's final order. The cases were consolidated by agreement on July 18, 1989.

The substantial evidence rule, in this type of case, does not require the trial court to review the record of the commission hearing, but provides a forum for the introduction of evidence for the trial court to decide whether, at the time of the order resulting from the hearing, there was in existence evidence of a substantial nature to reasonably support the order. *Heard v. Incalcaterra*, 702 S.W.2d 272, 276 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The reviewing court may neither substitute its judgment for that of the agency on controverted issues of fact, nor may it set aside the order because the evidence did not compel the result reached by the agency. *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424, 436 (Tex.1946). The sole issue for the district court is whether the agency acted arbitrarily and without regard to the facts. *Id.* 198 S.W.2d at 441.

After the trial, the trial court held, as a matter of law, there was not substantial evidence to reasonably support the commission's order, specifically stating "[t]he evidence adduced on behalf of the Defendant in support of the suspensions of the Plaintiffs is incredible and unreasonable and accordingly the orders of the Civil Service Commission suspending the Plaintiffs was not supported by substantial evidence."

Appellees argue that the trial court obviously found Diehl's testimony to be incredible and unreasonable, when viewed in light of all the testimony. However, the trial court may not set aside an administrative order merely because testimony was conflicting or disputed or because it did not compel the result reached by the agency. *Brinkmeyer*, 662 S.W.2d at 956. The resolution of factual conflicts and ambiguities is the province of the administrative body, and it is the aim of the substantial evidence rule to protect that function. The reviewing court is concerned only with the reason-

---

**3.** TEX.REV.CIV.STAT.ANN. art. 1269m, § 16, Act of May 17, 1955, 54th Leg., R.S., ch. 255, § 2, 1955 Tex.Gen.Laws 706, 707.

ableness of the administrative order, not its correctness. *Id.* On appeal to this Court, we must determine whether the trial court acted in accordance with these guiding rules and principles. *See Valentino,* 674 S.W.2d at 817.

From a review of the complete record that was before the trial court, we conclude the trial court abused its discretion when it held there was not substantial evidence to reasonably support the commission's order. Accordingly, we sustain the City's third point of error.

In its fourth point of error, the City asserts the trial court erred in holding the commission orders were void or invalid because they failed to comport with the statutory requirements.

■ Article 1269m, section 16, entitled "indefinite suspensions," provided that the commission was to review indefinite suspensions, hold a hearing, and render a written decision within 30 days after receipt of notice of appeal from the officer or employee. The statute stated "the decision of the commission *shall* state whether the suspended officer or employee shall be permanently or temporarily dismissed" or restored to the former position or status in the department. Tex.Rev.Civ.Stat.Ann. art. 1269m, § 16. (emphasis added).

Appellees allege the commission's order failed to change the police chief's "indefinite suspension" into a definite suspension, and the order was therefore invalid and void.[4]

The final orders of the commission, in the cases of Becker and Cerda, specifically found:

1. The cited instances and charges set out and contained in the letter of indefinite suspension dated March 18, 1985, from Chief of Police Lee P. Brown to the Firemen's and Policemen's Civil Service Commission of the City of Houston, are true and correct, and represent a sufficient basis for such indefinite suspension.

2. Such indefinite suspension should in all things be upheld and sustained.

The commission then ordered the action of the police chief, indefinitely suspending the officers, be upheld.

Neither party has cited a case dealing with the specific issue raised by the City in this point of error. Several cases have, however, upheld orders of indefinite suspension. *See Brinkmeyer,* 662 S.W.2d at 955; *Valentino,* 674 S.W.2d at 813; *Plaster v. City of Houston,* 721 S.W.2d 421, 423 (Tex.App.—Houston [1st Dist.] 1986, no writ). These cases use the terms "indefinite suspension," "permanent dismissal," and "termination," interchangeably.

In *Patton v. City of Grand Prairie,* 686 S.W.2d 108 (Tex.1985), the supreme court held that any order from a civil service commission is appealable and it is immaterial whether the order arose from an article 1269m, section 16 indefinite suspension or a section 20 temporary suspension. In *Patton,* the supreme court expressly approved the reasoning of *City of Laredo v. Solis,* 665 S.W.2d 523, 524–25 (Tex.App.—San Antonio 1983, no writ), which held the 1979 amendments to the statute made every suspension appealable, irrespective of the length of the suspension. The San Antonio Court of Appeals also included that the legislature clearly did not consider the requirements of section 16, i.e. that the commission's decision be in writing, as essential to a review by the district courts. *City of Laredo,* 665 S.W.2d at 527.

In light of these cases, we hold the trial court erred in its ruling that the commission's order is void or invalid. We sustain the City's fourth point of error.

In its fifth point of error, the City asserts that the trial court erred in holding the pre-termination and suspension proceedings violated the appellees' due process rights.

The trial court's judgment states, in part, that "the Plaintiffs were denied due process in the imposition of their suspensions"

---

**4.** The City correctly points out this allegation could only apply to the orders in Becker's and Cerda's cases, because the order in Anderson's case expressly stated that the 30–day suspension was being upheld.

and that "the actions of [the City] in suspending the Plaintiffs were unconstitutional and in violation of the due process provisions of the United States Constitution and the Texas Constitution."

 Appellees complained they were improperly denied a pre-suspension hearing, and they assert that, prior to their suspension, they were entitled to know the identity of the person who had complained about their actions.[5]

Appellees were given notice of the charges against them, and the opportunity to respond when they gave their administrative statements, detailing their account of the incident. Their statements were considered by the investigative committee and the police chief before the determination of suspension was reached. The appellees were given a full post-termination hearing, with a face-to-face confrontation of, and the ability to cross-examine, the witnesses against them, as well as the opportunity to present their own witnesses.

Two relevant cases are *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), handed down one day after the appellees' suspensions were upheld by the commission, and *Bexar County Sheriff's Civil Service Commission v. Davis,* 802 S.W.2d 659 (Tex.1990), interpreting the application of *Loudermill* in Texas civil service cases.

In *Davis,* the supreme court noted that *Loudermill* held that every terminated employee is constitutionally entitled to "some pre termination opportunity to respond" to charges forming the basis of the dismissal. *Davis,* 802 S.W.2d at 662. Nothing in *Loudermill* requires a formal pretermination hearing, and *Davis* upheld the same pretermination process used in the present case, against a due process challenge, due to the existence of the post-termination hearing. *Id.* at 662–63.

We conclude the trial court erred in holding the City's pretermination and suspension proceedings violated appellees' due

process rights. We sustain point of error five.

We reverse the judgment and render judgment affirming the decisions of the Civil Service Commission.

---

5. Appellees argue that if they had known Officer Diehl, and not Jaszlics, had made the complaint, they could have presented a better defense to the charges before the decision was made to suspend them.